UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Susan Brown,                                        Civ. File No. 04-1474 (PAM/RLE)

                    Plaintiff,

v.                                                  **MEMORANDUM AND ORDER**

Grant Holding, LLC, Cutler Mortgage
Company, Hendrie Cutler Grant,
individually, Douglas Grimm, individually,
and Nathan Shaw, individually,

                    Defendants.

_____

        This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment.

For the reasons that follow, the Motion is granted in part and denied in part.

**BACKGROUND**

**A.      Plaintiff and the Property**

        In 1979, Plaintiff Susan Brown purchased a single family home located at 4034 42nd

Avenue South in Minneapolis, Minnesota ("Property").    In 1999, Brown refinanced her

mortgage on the Property with Norwest Bank (now Wells Fargo Home Mortgage).    Her

mortgage payments were approximately $1,000 per month.    In 2001, Brown fell behind on her

mortgage payments.  After she lost her job in February 2002, she fell further behind.

        Brown filed for Chapter 13 bankruptcy in February 2002.    In the bankruptcy petition,

Brown set the value of the home at $100,000 and her mortgage payment at $1,140 per month.

On June 20, 2002, the Bankruptcy Court authorized Wells Fargo Home Mortgage to proceed

with foreclosure.    The foreclosure sale took place on September 19, 2002.    When the

foreclosure occurred, Brown owed Wells Fargo Home Mortgage approximately $99,090 on

her mortgage.

**B.      Defendants and the Agreement**

Defendant Hendrie Cutler Grant is president of Defendant Grant Holding and Defendant Cutler Mortgage.[1]   Defendant Douglas Grimm, a former agent for Grant Holding, was responsible for identifying homeowners who had substantial equity in their homes but who were facing foreclosure.   He was also responsible for soliciting those homeowners and representing that refinancing the mortgage debt would allow the homeowners to keep their homes.[2]

Prior to the expiration of the redemption period on the foreclosure sale, Grant contacted Brown and informed her that he was an investor that could help her save her home from foreclosure.   Thereafter, Grimm visited Brown several times and explained that, despite her circumstances, he wanted to help her avoid foreclosure and keep her home by structuring a real estate transaction between Grant Holding and Brown.   Specifically, he offered to have Brown convey her home to Grant Holding, and then Grant Holding would lease the property back to Brown with an option to repurchase it.

According to Brown, Grimm failed to explain several key details of the transaction

---

[1] In 2003, the Minnesota Department of Commerce suspended the real estate sales license of Hendrie Cutler Grant and the residential mortgage originator's license of Cutler Mortgage Company for engaging in the same practices alleged in the Complaint.   The Minnesota Court of Appeals recently affirmed the suspension.   See In re License of Grant, No. 04-1095, 2005 WL 406260 (Minn. Ct. App. Feb. 22, 2005).

[2] Defendant Grimm has been dismissed from this action without prejudice.   He is cooperating with Plaintiff in this Motion, and has submitted an affidavit in support of her Motion.

during these visits.  For example, Grimm did not reveal that the agreement could require Brown

to pay rent in an amount greater than what she had been paying as a mortgage payment.  (Grimm

Aff. ¶ 7.)  He also did not disclose that Brown would have to pay a $25,000 fee in order to

repurchase the Property from Grant Holding.  (Id.)

On March 17, 2003 — a day before the redemption period expired — Brown decided

that she wanted to proceed with the transaction. Consequently, Grimm described the terms of

the transaction and had Brown execute a quit claim deed conveying title to Grant Holding.

However, the parties dispute whether Grimm provided Brown sufficient information to make

an informed decision.  Brown relies on an affidavit of Grimm, in which he questions whether

he explained the transaction with sufficient clarity to ensure that Brown understood the

consequences of her failure to perform.  Specifically, although Grimm informed Brown that

she could be evicted from the Property if she failed to meet the terms of the agreement, he did

not advise her that she would lose the approximately $60,000 in equity she had in the Property

if she was evicted or if she failed to repurchase the Property before the expiration of the

contemplated lease agreement.  (Grimm Aff. ¶¶ 10-11.)

In contrast, Defendants contend that Grimm provided sufficient information to Brown

and note that his answer to an interrogatory explains:

> [Brown] said she wanted to keep her house, and asked me to explain the terms
> to her.  I explained the terms that Grant Holding required, including deeding the
> house to Grant Holding and subsequently paying rent.  I clearly explained the
> rent would be around $1,000 per month.  I also clearly explained that there
> would be a $25,000 fee if and when she repurchased the home.
> . . .
> I reminded her as clearly as possible that if she did not pay rent, Grant Holding

would enforce eviction procedures rigorously.

(Tigue Aff. Ex. B at 2-3.)

On March 18, 2003, Brown and Grant Holding executed an agreement, whereby Brown agreed to quit claim the Property to Grant Holding and enter into a lease for one year ("Transaction Agreement").  The Transaction Agreement states:

> Grant/Cutler will purchase the property for its redemption cost.  Grant/Cutler will lease the property back to Brown for fair market rent in the amount of $1,050 . . . per month for the term of one year (the "Lease").  During the term of the Lease, Brown will have the option to purchase ("Option to Purchase") the property for the sum of: Redemption Costs, plus any other "out-of-pocket" expenses incurred to redeem/finance/carry the Property, plus $25,000.00.

(Grant Aff. Ex. D. ¶ 4.)

On March 19, 2003, Brown executed a Power of Attorney, authorizing Grant to act on her behalf.  Grimm advised Brown that the Power of Attorney was necessary to ensure that Grant Holding could help her stay in the home.  The same day, Grant Holding executed three mortgages on the Property in favor of Defendant Cutler Mortgage so that the redemption period would extend twenty-one days.  Ultimately, Cutler Mortgage redeemed the Property for the sum of $99,090.

On April 21, 2003, Grant Holding asked Brown to sign a lease agreement with an option to purchase.  Under the lease agreement, Brown was to pay $1050 per month in rent.  Brown neither executed the lease nor paid Defendants any rent.

## C.     The Unlawful Detainer Action and Settlement Agreement

4

Because Brown failed to pay rent, Grant Holding commenced an unlawful detainer action in June 2003.   Both represented by counsel, the parties settled the action.   The settlement agreement called for Brown to pay Grant Holding $5,351 and to sign a lease with option to purchase by July 11, 2003.   It also provided that if payment was made before July 1, 2003, the amount would be reduced to $5,246.

The settlement agreement further provided that the Hennepin County Housing Court would immediately issue a writ of recovery if Brown did not make the payment and sign the lease by July 11, 2003.   In addition, it provided that Brown agreed to vacate the Property and remove all of her personal belongings from the premises if a writ of recovery was issued. Furthermore, Brown agreed to sell Grant Holding her personal property if she failed to remove it.  Finally, the settlement agreement contained a release, which stated:

> Grant Holding and Brown mutually agree to release, acquit, forever discharge
> and agree not to participate in any lawsuit against each other for any and all
> actions . . . on account of, or in any way growing out of, any and all known and
> unknown damages resulting or to result from or asserted which arose from the
> beginning of time up to the date of the execution of this release in connection
> with the property.

(Tigue Aff. Ex. G.)

Brown failed to make any payments or execute the lease agreement by July 11, 2003. Accordingly, Grant Holding obtained a writ of recovery from the Hennepin County Housing Court on July 17, 2003.   Grant Holding evicted Brown from the Property on July 24, 2003. Because Brown had failed to remove her personal property from the Property, Grant Holding seized her personal property and tendered $100 to Brown.

On September 3, 2003, Brown filed a Verified Petition for Emergency Relief and Related Claims, seeking an order to return her personal property. On December 17, 2003, Brown and Grant Holding orally settled that action, and Brown's attorney summarized the settlement terms in a letter. Under the settlement terms, Grant Holding agreed to pay Brown $5,000 as compensation for her personal property. It also agreed to forgive Brown the $5,800 that Grant Holding alleged due for rent. The parties were to execute a formal settlement agreement in December 2003, but the settlement agreement and stipulation of dismissal were never executed.

Brown commenced this action in March 2004, bringing claims under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639, and various state law claims. The Complaint also alleges the existence of an equitable mortgage. Brown now moves for partial summary judgment, seeking an order that the March 2003 transaction created an equitable mortgage and dismissing Defendants' fraud counterclaim. Defendants submit that the equitable mortgage claim is baseless and barred by waiver, res judicata, and the Rooker-Feldman doctrine. They also submit that factual disputes preclude the dismissal of their fraud counterclaim.

**DISCUSSION**

**A.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  <u>Enter. Bank v. Magna Bank</u>, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  <u>Enter. Bank</u>, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

Whether a transaction created an equitable mortgage generally cannot be determined at summary judgment because the issue turns on what the parties intended when the transaction occurred.  <u>See</u> <u>Albright v. Henry</u>, 174 N.W.2d 106, 112-13 (Minn. 1970); <u>Gagne v. Hoban</u>, 159 N.W.2d 896, 900 (Minn. 1968) ("In the final analysis, the question of whether the parties to a conveyance really intended it to be absolute or security for indebtedness is for the triers of

CASE 0:04-cv-01474-PAM-JSM   Document 104   Filed 08/02/05   Page 8 of 18

fact."); <u>Fraser v. Fraser</u>, Nos. C6-01-812 and C8-01-813, 2003 WL 21743707, at *3 (Minn. Ct. App. 2003) (warning about the inappropriateness of a summary judgment ruling on the existence of an equitable mortgage).

**B.      Equitable Mortgage**

Plaintiff submits that the March 2003 transaction in which she conveyed a quit claim deed to Grant Holding was a security conveyance by which she would use her equity to stay in her home.     Conversely, Defendants submit that the transaction was an outright sale and leaseback arrangement.

Courts presume that a deed is a conveyance.   <u>Ministers Life & Cas. Union v. Franklin Park Towers Corp.</u>, 239 N.W.2d 207, 210 (Minn. 1976).     However, Minnesota courts have applied the doctrine of equitable mortgages "to prevent an overreaching by one party that would unfairly exploit the other party's financial position or relative lack of real estate dealings." <u>Id.</u>   To create an equitable mortgage, all circumstances must indicate that both parties intended the transaction to be a loan advanced on security of realty.   <u>Trondson v. Janikula</u>, 458 N.W.2d 679, 682 (Minn. 1990); <u>First Constr. Credit, Inc. v. Simonson Lumber of Waite Park, Inc.</u>, 663 N.W.2d 14, 18 (Minn. Ct. App. 2003).

1.      <u>Intent of Parties</u>

The key determination of whether a transaction is an outright sale or an equitable mortgage is the intention of the parties.   <u>Ministers Life & Cas. Union</u>, 239 N.W.2d at 210. Testimony that one party intended the transaction to be an equitable mortgage is insufficient. <u>Id.</u> Rather, because the deed is presumed to be a conveyance, it must be clear that both parties

8

intended that the transaction result in a mortgage.  Id.; see also Hewitt v. Baker, 24 N.W.2d 47, 52 (Minn. 1946).

The Court may examine documents relating to the transaction to determine the intent of the parties at the time of the conveyance.  Ministers Life & Cas. Union, 239 N.W.2d at 210-11.  For example, the lack of terms such as "debt," "security," or "mortgage" is strong evidence indicating that the transaction is not a mortgage.  Id.; see also First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 503-04 (Minn. 1981) (finding of equitable mortgage inappropriate when document conclusively states that it is an unsecured loan).  However, the fact that documents do not express the existence of a loan is not controlling if all the circumstances indicate that the transaction is really a loan advanced on security.  Gagne, 159 N.W.2d at 899; Hewitt, 24 N.W.2d at 52 (evidence of no bond or promissory note must be considered, "but it is not complete or conclusive evidence that a transaction was a sale, and not a mortgage"); Fraser, 2003 WL 21743707, at *3 n. 3 ("it is not necessary that a promissory note be issued to prove that money advanced is a loan where there is other evidence sufficient to show that the transfer is a loan").

The parties dispute what their intentions were when they executed the March 2003 transaction.  Brown insists that she intended to enter into a loan arrangement that allowed her to use her equity as security so that she could continue living in her home.  In contrast, Grant declares that he never contemplated that the transaction was a mortgage.  Rather, he intended the transaction to be a conveyance of the Property to Grant Holding, and a subsequent leaseback with a right to purchase.  Moreover, the Transaction Agreement in this case is devoid

of any language such as "debt," "security," or "mortgage."   Indeed, the Transaction Agreement specifies that Grant Holding was purchasing the Property, and that Brown was leasing the Property with an option to purchase the Property back.   These facts weigh in favor of finding that the transaction was a conveyance and not an equitable mortgage.

      2.      <u>Disparity Between the Value of the Property and the Price Paid</u>

Another factor that the Court may consider is the difference between the market value of the Property and the price paid by Grant Holding.   <u>River Run Props. v. Kappendahl</u>, No. C2-03-10463, at 10-12 (Anoka County Dist. Ct. July 12, 2004) ("disparity between a property's value and its sale price [is] an important factor in determining the intention of transacting parties").   If the value of the Property was greater than the consideration given for the quit claim deed, that fact weighs in favor of finding that the transaction was intended to operate as a mortgage. <u>Id.</u>; <u>see also</u> <u>Gagne</u>, 159 N.W.2d at 900.

In this case, the amount owed for redemption was $99,090.   An independent appraiser valued the Property at $170,000, and Grant Holding received a mortgage for $127,500 based on that appraisal.   However, Grant Holding resold the property to a third party for $110,000. The dispute in the valuation of the Property creates a genuine issue as to whether there was a disparity between the price Grant Holding paid and the actual value of the Property.

      3.      <u>Nature of Solicitation that Gave Rise to the Transaction</u>

Also relevant to the Court's determination is the nature of solicitation that gave rise to the transaction in question.   <u>River Run Props.</u>, at 15 ("[T]he message of the advertisement is

10

to allow the customer to be bailed out and <u>keep</u> their home. The advertisement is not directed to one who is interested in <u>selling</u> his home.") (emphasis in original).

In this case, Grimm frequently stressed that the purpose of the transaction was to allow Brown to keep her home and continue to live in it. Moreover, the Court notes that Defendants are experienced real estate professionals who approached Brown, an unsophisticated homeowner, to enter into the transaction at a time of extreme financial distress and while the Property was in foreclosure. These facts weigh in favor of finding an equitable mortgage.

However, Defendants counter with evidence that Grimm explained all of the necessary details to Brown, that Brown indicated that she understood the terms, and that she would have the funds to make the rental payments. These facts indicate that Brown understood that she was selling the Property and leasing it back with the option to repurchase.

    4.    <u>Attempts to Sell the Property in the Open Market</u>

The Court also may consider whether the Property was sold on the open market. The failure to list the Property on the open market indicates that the transaction was intended to be a security arrangement and not an outright sale of property. <u>Id.</u>, at 16.

In this case, the parties negotiated the deal without undergoing the normal steps accompanying a real estate sale. In particular, neither the Power of Attorney, the quit claim deed, nor the Transaction Agreement was generated by the normal mechanisms of an open market sale. These facts support a finding that the transaction created an equitable mortgage.

    5.    <u>Negotiated Sale Price</u>

The Court may also weigh whether the parties negotiated the price of the Property. "Pegging the sales price on an amount other than — and far less than — the Property's value is conduct by the parties that is inconsistent with an intention to complete an outright sale of the Property." Id. at 17.

In this case, the parties did not negotiate a sale price. Rather, Grant Holding merely purchased the Property for the redemption price of $99,090. This weighs in favor of finding that the transaction created an equitable mortgage.

6.     Continuous Occupancy

Finally, the Court notes that Brown continued to occupy the Property after the Transaction Agreement was executed. Minnesota law recognizes the significance of a grantor remaining in occupancy and not relinquishing possession. For example, in Gagne, the grantor-plaintiff gave a deed, but took an option to purchase back. The Gagne Court found the transaction to be a loan transaction in large part because "the option contract . . . gave plaintiff the right to continue in use and occupancy of the property." 159 N.W.2d at 900.

In this case, Brown remained in possession of the Property after the execution of the Transaction Agreement. Notably, however, the fact that she remained in possession of the Property is also consistent with a leaseback with option to buy. Thus, the Court finds this factor neutral in determining the intent of the parties.

Because the factors are split — and because Minnesota courts have warned that the issue is for the trier of fact — the Court cannot rule as a matter of law that the March 2003

transaction resulted in an equitable mortgage.      Accordingly, the Court denies Plaintiffs'
Motion on this point.

**B.     Procedural Bars**

In addition to attacking the claim on its merits, Defendants maintain that several
procedural doctrines bar the equitable mortgage claim.

1.     Res Judicata

Defendants first argue that res judicata precludes litigation of the equitable mortgage
claim.   In particular, they contend that Brown could have interposed her equitable defense in
the unlawful detainer proceedings and litigated it there.   The preclusion principle of res
judicata prevents the re-litigation of a claim that was raised or that could have been raised in
a prior suit.   Banks v. Int'l Union Elec., Technical, Salaried & Mach. Workers, 390 F.3d 1049,
1052 (8th Cir. 2004) (citing Lane v. Peterson, 899 F.2d 737, 741 (8th Cir. 1990)).   The Court
examines three factors to determine if res judicata applies: "(1) whether the prior judgment
was rendered by a court of competent jurisdiction; (2) whether the prior judgment was a final
judgment on the merits; and (3) whether the same cause of action and the same parties or their
privies were involved in both cases."   Id.

Brown argues that the Housing Court decision has no preclusive effect because she
could not have raised her equitable defense in that proceeding.   "An unlawful detainer action
merely determines the right to present possession and does not adjudicate the legal or
equitable ownership rights of the parties."   Fed. Land Bank of St. Paul v. Obermoller, 429
N.W.2d 251, 257 (Minn. Ct. App. 1988) (citation omitted); see also Minn. Stat. § 504B.001

13

(defining "eviction" as "a summary court proceeding to remove a tenant or occupant from or otherwise recover possession of real property").   Minnesota courts have not decided whether an equitable defense may be raised in an eviction proceeding.   However, they have held that courts should not interfere with the summary nature of eviction proceedings when an alternate process is available to resolve equitable claims.   Amresco Residential Mortg. Corp. v. Stange, 631 N.W.2d 444, 445-46 (Minn. Ct. App. 2001) (affirming dismissal of equitable counterclaims in a housing court action, but stating that the party could file a separate proceeding asserting those claims and seeking to enjoin the eviction action); see also Fraser v. Fraser, 642 N.W.2d 34, 40-41 (Minn. Ct. App. 2002) ("to the extent [a party] has the ability to litigate her equitable mortgage and other claims and defenses in alternative civil proceedings, it would be inappropriate for her to seek to do so in the eviction action").

Brown is now seeking relief in an alternate proceeding.   It therefore would have been improper for her to raise her equitable mortgage claim in the unlawful detainer action. Accordingly, the unlawful detainer action judgment has no preclusive effect on the equitable mortgage claim.

2.   Rooker-Feldman

Defendants also submit that the Rooker-Feldman doctrine bars the equitable mortgage claim.   The Rooker-Feldman doctrine states that lower federal courts lack subject matter jurisdiction to review state court judicial determinations.   Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Prince v. Ark. Bd. of Exam'rs in Psychology, 380 F.3d 337, 340 (8th Cir. 2004).   The doctrine

14

bars not only straightforward review of state court judgments, but also "indirect attempts by federal plaintiffs to undermine state court decisions." Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000). In determining whether Rooker-Feldman applies, a federal court must determine whether the claim is "inextricably intertwined" with the claim already decided in the state court. Id. at 492-93. A claim brought in federal court is inextricably intertwined if the federal district court must nullify the state court decision to find in favor of the federal plaintiff. Id. at 493. Thus, "Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding." Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998); see also Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) (Rooker-Feldman bars federal review if requested relief would effectively reverse the state court decision or void its ruling).

Because the Hennepin County Housing Court only decided whether Brown could retain possession of the Property — and could not decide the equitable claim — Rooker-Feldman does not apply.

      3.   Waiver

Defendants also argue that the June 2003 settlement agreement bars Brown from raising the equitable mortgage claim. Brown responds that the settlement agreement lacked consideration.

Assuming that the March 2003 transaction created an equitable mortgage, Brown reasons that she already had the right to stay in her home because Defendants could not evict her without following proper foreclosure procedures. If the March 2003 transaction created

an equitable mortgage, title and right to possession remained with Brown until the completion of proper foreclosure procedures.   Thus, Grant Holding could not evict Brown, but instead was required to foreclose by action, and Brown would retain equitable and legal rights of redemption.   See Albright, 174 N.W.2d at 111; Stipe v. Jefferson, 257 N.W.2d 99, 100 (Minn. 1934).   Because the issue of whether the March 2003 transaction created an equitable mortgage remains, the Court defers ruling on whether the settlement agreement lacked consideration and is therefore unenforceable.

C.      **Defendants' Fraud Counterclaim**

The fraud counterclaim is based on alleged misrepresentations made by Brown that she would be able to make the rental payments, and that she would obtain money from her parents if necessary.

Fraud encompasses intentional misrepresentation.   <u>Iverson v. Johnson Gas Appliance Co.</u>, 172 F.3d 524, 529 (8th Cir. 1999); <u>Dvorak v. Maring</u>, 285 N.W.2d 675, 678 n.4 (Minn.1979) ("we see no distinction between a theory of recovery based on intentional misrepresentation and one based on fraud"). To state a claim for intentional misrepresentation under Minnesota law, Defendants must show that: (1) Brown made a false representation relating to a past or present material fact that the fact was susceptible of knowledge; (2) Brown knew it was false or asserted it as of her own knowledge without knowing whether it was true or false; (3) Brown intended to induce Defendants to act and Defendants were indeed induced to act; and (4) Defendants acted in reliance on the representation and were thereby damaged. <u>M.H. v. Caritas Family Servs.</u>, 488 N.W.2d 282, 289 (Minn. 1992) (citing <u>Florenzo v. Olson</u>, 387 N.W.2d 168, 174 n.4 (Minn. 1986)).   "It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place."   <u>Vandeputte v. Sonderholm</u>, 216 N.W.2d 144, 147 (Minn.1974). "Where a representation regarding a future event is alleged, . . . an additional element of proof is that the party making the representation had no intention of performing when the promise was made."   <u>Martens v. Minn. Mining & Mfg. Co.</u>, 616 N.W.2d 732, 747 (Minn. 2000).

17

The statements on which Defendants rely do not relate to past or present facts. Rather, they are promises of future payment. Moreover, there is no evidence that Brown knew her representations were false. To the contrary, the record indicates that Brown was exploring financial aid measures to assist her to make lease payments, but that she ultimately was unable to secure the aid. Accordingly, Defendants' fraud counterclaim fails as a matter of law.

**CONCLUSION**

Summary judgment is an inappropriate vehicle to determine whether the March 2003 transaction created an equitable mortgage or outright conveyance and leaseback, especially since the intent of the parties is unclear. In contrast, no question remains that Defendants have failed to present a factual dispute on their fraud counterclaim. Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Partial Summary Judgment (Clerk Doc. No. 76) is **GRANTED in part** and **DENIED in part**; and

2.  Defendants' Fraud Counterclaim is **DISMISSED WITH PREJUDICE**.


Dated: August 2, 2005

                                    s/ Paul A. Magnuson
                                    Paul A. Magnuson
                                    United States District Court Judge